UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TIMOTHY C. COLLINS, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 1:04CV00123 ERW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon *pro se* Timothy C. Collins' ("Movant") Motion Pursuant to 28 U.S.C. § 2255 [doc. #1], filed on September 13, 2004. The United States of America ("Government") filed its Response to Movant's § 2255 Petition and Motion to Dismiss [doc. #5] on November 16, 2004. Movant submitted a traverse [doc. #6] on December 21, 2004. The Court held a telephone conference on January 19, 2005, and ordered additional briefing by the Government. The Government filed its memorandum on January 25, 2005. Movant submitted a response on February 10, 2005.

## I.   BACKGROUND FACTS

On October 27, 2003, Movant changed his plea to guilty. The Indictment charged Movant with "knowingly and intentionally distribut[ing] cocaine base, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code 841(a)(1),[1] and punishable

---

[1] 21 U.S.C. § 841(a)(1) states in relevant part that "it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

under Section 841(b)(1)(C).[2]" (Collins' Indictment at 1).

On February 25, 2004, a United States Probation Officer filed a Presentence Investigation Report ("PSR"). The PSR noted that on December 22, 2002, a confidential informant ("CI") and an undercover officer purchased approximately 1.20 grams of "crack" cocaine from Movant.[3] From March until May 2003, a CI purchased "crack" cocaine from Movant on three occasions; the amounts purchased by the CI included .27 gram, .63 gram, and .30 gram. Additionally, four sources of information ("SOI") reported purchasing "crack" cocaine from Movant over various time periods. A SOI reported that over the past three years, Movant sold SOI "crack" cocaine at least once per week and sometimes as much as four or five times per week. Three other SOIs reported purchasing small amounts of "crack" cocaine from Movant. On May 3, 2003, law enforcement officials executed a federal search warrant at Jasmine's, a nightclub managed by Defendant, and found .85 gram of "crack" cocaine. Additionally, the search produced thirty index cards with names and monetary amounts, a gram precision "PocketTech" digital scale, and numerous plastic baggies. The PSR reported that Movant had no prior criminal history and concluded that the base offense level should be set at 31. Movant filed no objections to the PSR.

---

[2] 21 U.S.C. § 841(b)(1)(C) states in relevant part that "[i]n the case of a controlled substance in schedule I or II ... such person shall be sentenced to a term of imprisonment of not more than 20 years ... a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $1,000,000 if the defendant is an individual ... any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment."

[3] The United States Sentencing Guidelines provides that "'[c]ocaine base', for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S. Sentencing Guidelines Manual § 2D1.1 (2002).

(Presentence Investigation Report at 2-3).

The Government entered into a series of plea negotiations with Movant. The Government informed Movant that it could produce at least six witnesses that could testify that Movant distributed at least 1.5 kilograms of cocaine base. (Letter from Government to Movant's counsel of 9/18/03 at 1). Eventually, Movant accepted the Plea Agreement. The Plea Agreement states that Movant knowingly and intentionally sold to an informant from the Southeast Missouri Drug Task Force and an undercover law enforcement officer from the Dyersburg, Tennessee Police Department, two grams of cocaine base on December 22, 2002 (Plea Agreement, Guidelines Recommendations and Stipulations at 7-8). Within the Plea Agreement, Movant agreed to waive all rights to contest the conviction or sentence in any post conviction proceeding, including one under § 2255, except for grounds of prosecutorial misconduct or ineffective assistance of counsel (Plea Agreement, Guidelines Recommendations and Stipulations at 10-11).

Subsequently, on October 27, 2003, Movant changed his plea to guilty. Within the colloquy, the following exchange took place:

> Q. If you waive or give up your right to remain silent and consent or agree to answer questions I am about to ask you, you will be saying some things that are harmful to you, which will incriminate you, and which will actually convict you, and if you answer my questions which I am about to as ask you, and you have no duty to answer, you will be doing Mr. Ferrell's [the Government's attorney] job for him by your own statements. Do you understand?
> A. Yes.

(Change of Plea Tr. at 4, lines 7-14). Subsequently, the Court asked Movant if he was "aware that you [Movant] have a right to see and hear all the evidence and witnesses presented against you, and your counsel could cross-examine any witnesses presented by the Government?" Movant answered affirmatively (Change of Plea Tr. at 8, lines 16-19). After addressing the plea

agreement, the Court asked about Movant's counsel:

> Q. Has he [counsel] conducted himself in a manner that causes you [Movant] to have any complaint against him as your attorney either because of something he did, something he failed to do, or for any other reason?
> A. No, sir.
> Q. Have you been entirely satisfied with the services performed on your behalf by Mr. Poore [counsel] at this time?
> A. Yes, sir.

(Change of Plea Tr. at 7, lines 11-18). Finally, the Court asked if Movant understood "the range of punishment in this case," and Movant answered affirmatively. (Change of Plea Tr. at 14, lines 20-22).

After the PSR was filed, the Court sentenced Movant on February 25, 2004. The Court noted that there were no objections to the factual statements contained in the PSR and adopted the statements as the Court's finding of fact (Sentencing Hr'g Tr. at 2, lines 14-21). Movant's counsel affirmed his client's acceptance of the PSR and requested leniency (Sentencing Hr'g Tr. at 8-11). The Court sentenced Movant to eighty-eight months (Sentencing Hr'g Tr. at 14, line 2).

No direct appeal was filed. Movant filed the present Motion under § 2255 on September 13, 2004,[4] alleging two grounds:

**Ground One:**[5] (1) Counsel was ineffective for his incompetent advice to plead guilty to

---

[4] "A 1-year period of limitation shall apply to a motion under [§ 2255]." 28 U.S.C. § 2255 ¶ 6. "[T]he one-year time limit for filling § 2255 motions is a statute of limitation and not a jurisdictional bar." *Moore v. United States of America*, 173 F.3d 1131, 1134 (8th Cir. 1999). "The limitation period shall run from . . . (1) the date on which the judgment of conviction becomes final". 28 U.S.C. § 2255 ¶ 6 (1).

[5] "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

relevant conduct which could not have been proven by the [G]overnment. (2) Counsel was ineffective for allowing Petitioner to plead guilty, without proof beyond a reasonable doubt that the cocaine used in the case was "crack". (3) Counsel misled Petitioner into pleading guilty, to prevent the [G]overnment from bringing in 3-5 (kilograms) of cocaine as relevant conduct, which could not have been proven and was not part of this case.

**Ground Two:** Petitioner was sentence[d] in violation of the Sixth Amendment and due process of law [sic] according to *Blakely v. Washington*.

For the reasons set forth below, the Court concludes that the above grounds are meritless. Accordingly, the Court will dismiss Movant's Motion Pursuant to 28 U.S.C. § 2255 [doc. #1].

## II.  STANDARD OF REVIEW: RELIEF UNDER 28 U.S.C. § 2255

A federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Claims based on a federal statute or rule, rather than on a specific constitutional guarantee, "can be raised on collateral review only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 354 (1994) (quotations and citations omitted).

Once a guilty plea is entered, the focus of collateral attack under § 2255 is limited to the nature of counsel's advice and the voluntariness of the plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)). When a defendant waives his appeal and post conviction relief rights in a plea agreement, the waiver will be enforced if it was knowingly and voluntarily made. *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000) (citing *United States v. Goings*, 200 F.3d 539, 543 (8th Cir. 2000)). However, where a

petitioner is arguing in his § 2255 motion that the plea and the waiver were not knowing and voluntary due to ineffective assistance of counsel, then the waiver does not bar the § 2255 claims. *Id*. at 924.

The United States Supreme Court held that a showing of ineffective assistance of counsel requires a petitioner to demonstrate: 1) that counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and 2) that "counsel's deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). The test articulated in *Strickland* applies to guilty plea challenges premised upon allegations of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Nelson v. Hvass*, 392 F.3d 320, 323 (8th Cir. 2004). In order to prove ineffective assistance of counsel under the first prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. When evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even if sufficient proof of the first prong exists, relief may only be obtained if a petitioner also proves that counsel's deficient performance prejudiced his case. *Id.* at 697. In order to satisfy the second prong, i.e., the 'prejudice' requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The court may address the two prongs in any order, and if the petitioner fails to make a sufficient showing of one prong, the court need not address the other prong. *Strickland*, 466 U.S. at 697; *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000)

(holding that "[i]f we can answer 'no' to either question, then we need not address the other part of the test.").

## III. DISCUSSION

The Court initially notes an evidentiary hearing is not necessary because a decision can be reached based on the motion, files, and records of the case. *See Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).

> **A. Ground One: (1) Counsel was ineffective for his incompetent advice to plead guilty to relevant conduct which could not have been proven by the [G]overnment. (2) Counsel was ineffective for allowing Petitioner to plead guilty, without proof beyond a reasonable doubt that the cocaine used in the case was "crack". (3) Counsel misled Petitioner into pleading guilty, to prevent the [G]overnment from bringing in 3-5 (kilograms) of cocaine as relevant conduct, which could not have been proven and was not part of this case.**

In the plea colloquy, Movant offered no complaints against his counsel, and instead of airing concerns, Movant affirmed his satisfaction with his counsel's performance. In spite of Movant's admission of counsel's satisfactory performance, the Court will examine each of Movant's arguments, in turn. Petitioner first and third arguments for ineffective assistance of counsel are the same. The first argument is that "[c]ounsel was ineffective for his incompetent advice to plead guilty to relevant conduct which could not have been proven by the [G]overnment." The third argument is that "[c]ounsel misled Petitioner into pleading guilty, to prevent the [G]overnment from bringing in 3-5 (kilograms) of cocaine [base] as relevant conduct, which could not have been proven and was not part of this case." Both arguments relate to whether Petitioner's history of drug distribution (1) could be considered relevant conduct and (2) could be proven by the government. These arguments will be addressed together.

7

Movant argues that Randall Collins' testimony would have been inadmissible because it was irrelevant to the charges in the Indictment. Randall Collins allegedly would have testified that Movant helped distribute three to five kilograms of "crack" cocaine. The Indictment charged Movant with "knowingly and intentionally distribut[ing] cocaine base, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code 841(a)(1), and punishable under Section 841(b)(1)(C)." (Collins' Indictment at 1). The Indictment does not charge Movant with a specific amount of cocaine base. The plea agreement under the heading "Base Offense Level" provides that "the parties recommend that the quantity of cocaine base for which the defendant is responsible, including relevant conduct, is at least 150 but less than 500 grams." (Plea Agreement, Guidelines Recommendations and Stipulations at 5).

The United States Sentencing Guidelines requires the calculation of the base offense level after consideration of all acts "that were part of the same source of conduct or common scheme or plan as the offense of conviction." U.S. Sentencing Guidelines Manual § 1B1.3 (2002). Evidence of a defendant's behavior will be admissible so long as it is "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of events." *Id*. at comment. n.9(B). The appropriate factors for consideration include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id*.

In *United States v. Anderson*, the court convicted the defendant of conspiring to distribute cocaine and cocaine base and of being a felon in possession of a firearm. 243 F.3d 478, 482 (8th Cir. 2001). The Eighth Circuit found that the district court did not err by including as relevant conduct drug quantities associated with events that occurred "several years before the conspiracy

to which he pleaded guilty." *Id*. at 485. *See also United States v. Geralds*, 158 F.3d 977, 979 (8th Cir. 1998) (finding to be relevant defendant's distribution of crack cocaine eighteen months earlier); *United States v. Killgo*, 397 F.3d 628, 630-31 (8th Cir. 2005) (finding to be relevant previous unfulfilled leases in defendant's fraud conviction for not providing aircraft as per lease agreement).

Like *Anderson*, Movant's drug distribution over the previous three years would have been relevant conduct. Randall Collins' testimony would have concerned the distribution of cocaine base which occurred over the preceding three years. Movant's drug distribution over the preceding three years is more continuous than the several year gap that the court permitted as relevant conduct in *Anderson*. The Government asseverates that Randall Collins' testimony would have demonstrated that Movant's previous drug distribution was part of the same source of conduct or common scheme or plan. Movant's previous drug distribution is sufficiently connected to establish that it is part of a single episode, spree, or ongoing series of events. Additionally, Movant did not object to the facts contained in the PSR. The PSR noted that Movant sold "crack" cocaine to a SOI at least once per week and sometimes four or five times per week over a period of three years. Since Randall Collins' testimony would have been admissible as relevant conduct had Movant proceeded to trial, the Court finds that Movant was not prejudiced by counsel's advise to accept the plea agreement.

Under the *Strickland* test, petitioner must prove that counsel's deficient performance prejudiced his case. 466 U.S. at 697. If petitioner fails to make a sufficient showing of prejudice, the Court need not address whether "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 697. Therefore, Movant's first and third

9

arguments, that counsel was ineffective for allowing Movant to plead guilty to relevant conduct that could not have been proven at trial, fail because he was not prejudiced by counsel's advice.

Movant's second argument is that "[c]ounsel was ineffective for allowing Petitioner to plead guilty, without proof beyond a reasonable doubt that the cocaine used in the case was 'crack'." This argument relates to Petitioner's waiver of the Government's responsibility to prove all of the elements of the offense beyond a reasonable doubt. Within the Plea Agreement, Movant waived his "right to require the government to prove the entire case against the defendant beyond a reasonable doubt." (Plea Agreement, Guidelines Recommendations and Stipulations at 10). The Supreme Court has found that "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). Movant can waive his right to require proof beyond a reasonable doubt as long as he enters the plea agreement knowingly and voluntarily. *United States v. Leachman*, 309 F.3d 377, 383-84 (6th Cir. 2002). Movant knowingly accepted the plea agreement as evidenced by the Petitioner's October 27, 2003 change of plea colloquy. When Movant appeared to change his plea, the Court advised Movant that if he pleaded guilty, the Government would not have to prove its case. Movant responded that he understood, and he waived his right to require the Government to prove beyond a reasonable doubt that the cocaine base used was "crack" cocaine. Additionally, Movant voluntarily entered into the plea agreement as evidenced by his negative response to the Court's question "[o]ther than this agreement, has anyone at any time made any other or different promises, representations, or assurances to you, or has anyone made any threats against you whatsoever in an effort or attempt to get you to enter a plea of guilty in this case?" Furthermore, the PSR consistently referred to "crack" cocaine, and

10

Movant validated the factual statements contained therein.  The Court finds that in this case Movant knowingly and voluntarily waived his right to have the jury prove the elements of the crime beyond a reasonable doubt.  Movant also accepted factual statements that continuously referred to the substance that he distributed as "crack" cocaine.

Additionally, Movant's lawyer utilized a reasonable strategy by encouraging Movant to plead guilty to a lesser amount rather than proceeding to trial.  *See Williams v. United States*, 343 F.3d 927, 928-29 (8th Cir. 2003) (per curiam) (finding reasonable counsel's advise to accept guilty plea when proceeding to trial could have significantly increased defendant's potential sentencing range).  As previously established, the Government may have presented evidence that would have established that Movant was involved in the distribution of more than 1.5 kilograms of cocaine base.  Rather than subject his client to a potential base level of thirty-eight, Movant's counsel advised him to accept the plea which set the base offense level at thirty-four.  If Movant proceeded to trial, and was convicted, he would have faced a sentence ranging from 235 to 293 months.  After accepting the Plea Agreement, Movant received a sentence of eighty-eight months.  The Supreme Court has noted that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Movant fails to meet his burden of demonstrating that counsel acted unreasonably.  Movant's counsel demonstrated "professionally competent assistance" when he advised Movant to accept the plea agreement.  *Id*. at 690.  For the foregoing reasons, Ground One is denied.

**B. Ground Two: Petitioner was sentence[d] in violation of the Sixth Amendment and due process of law [sic] according to *Blakely v. Washington*.**

Movant argues that his constitutional rights were violated because relevant conduct was not proven by a jury beyond a reasonable doubt. In *Blakely v. Washington*, the Supreme Court found the Washington's state sentencing guidelines to be unconstitutional. 542 U.S. 296 (2004). The *Blakely* Court reserved decision about the status of the federal sentencing guidelines. *Blakely*, 542 U.S. at n.9. However, the Supreme Court's subsequent January 2005 decision in *United States v. Booker* applied the analysis of *Blakely* to the federal sentencing guidelines. 125 S.Ct. 738, 769 (2005) (holding that the federal sentencing guidelines are subject to jury trial requirements of the Sixth Amendment, and the provisions of the Federal Sentencing Act which make the guidelines mandatory are unconstitutional). Because it was *Booker*, not *Blakely*, that applied to the federal sentencing guidelines, Movant's argument is properly decided in light of *Booker*. Although the Eighth Circuit has not ruled on this particular issue, this Court holds that *Booker* is not retroactively applicable to cases on collateral review.

In the present action, the Court sentenced Movant on February 25, 2004. For sentences imposed prior to January 12, 2005, the issue becomes whether *Booker* is retroactively applicable to collateral review. Movant argues that *Blakely* and *Booker* should be applied retroactively. In *Never Misses A Shot v. United States*, the Eighth Circuit joined the majority view that *Booker* is not retroactive. No. 05-1233, 2005 WL 1569403 (8th Cir. Jul. 7, 2005) (per curiam); s*ee also Guzman v. United States*, 404 F.3d 139 (2nd Cir. 2005) (holding that *Booker* is not retroactively applied to cases on collateral review); *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005) (same); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005) (*per curiam*) (same);

*United States v. Price*, 400 F.3d 844, 845 (10th Cir. 2005) (holding that *Blakely* is not retroactively applied to cases on collateral review). The Eighth Circuit reasoned that the new rule announced in *Booker* was not of "watershed" magnitude. *Id*. The Eighth Circuit referenced the Supreme Court's decision in *Schriro v. Summerlin*. *Summerlin* held that "[w]hen a Supreme Court decision results in a 'new rule' of criminal procedure, that rule applies to all criminal cases still pending on direct review, but, as to convictions that are already final, the rule applies only in limited circumstances." *Id*. The Eighth Circuit then referenced *Apprendi v. New Jersey*, one of the precursors to *Booker*. In *Apprendi* the Supreme Court found that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The Eighth Circuit found that *Apprendi* "is not of watershed magnitude and does not apply retroactively in collateral proceedings." *Never Misses a Shot*, 2005 WL 1569403. Like *Apprendi*, the Eighth Circuit concluded that *Booker* did not establish a watershed rule and did not apply retroactively. Therefore, the Court cannot consider Movant's argument because Movant's sentence was final before the *Booker* decision.

Movant's arguments pertaining to his Motion Pursuant to 28 U.S.C. § 2225 [doc. #1] fail because his counsel's actions fell within an objective standard of reasonableness. Furthermore, Movant's *Blakely* and *Booker* argument in inapplicable because *Blakely/Booker* do not apply retroactively.

**IT IS HEREBY ORDERED** that Movant Timothy C. Collins' Motion Pursuant to Under 28 U.S.C. § 2255 [doc. #1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Movant's § 2255 Motion.

Dated this <u>8th</u> day of August, 2005.

<span style="text-align: right; display: block;">_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE</span>